OPINION
{¶ 1} Robert Obhof was arrested in the early morning hours of February 6, 2006, and charged with failure to drive within marked lanes, in violation of R.C. 4511.33, and two charges of driving while under the influence of alcohol or drugs, in violation of R.C. 4511.19 ("OVI"). He entered a plea of "not guilty" at arraignment court.
 {¶ 2} Counsel filed a motion to suppress evidence in general and a separate motion to suppress the results of a test to determine the alcohol content of Mr. Obhof's *Page 2 
breath. The State of Ohio dismissed the OVI charge which was based upon a theory that Mr. Obhof was impaired and chose to proceed on the charge that Mr. Obhof was operating a vehicle with a prohibited blood alcohol content as measured through breath testing. Because the state was proceeding only on the blood alcohol concentration charge, the state filed a motion in limine to prevent testimony about the results of the field sobriety tests administered at the time of Mr. Obhof's arrest.
 {¶ 3} The trial court overruled the motion filed on behalf of Mr. Obhof and sustained the state's motion in limine. A jury trial was then conducted at the conclusion of which Mr. Obhof was found guilty. Following sentencing, this timely appeal has been pursued on his behalf.
 {¶ 4} Four errors have been assigned for our consideration:
 First Assignment of Error
 The trial court erred in overruling Appellant's motion to suppress when the probable cause for Appellant's arrest was based upon the results of a field sobriety test that was not conducted in compliance with National Highway Transportation Safety Administration standards.
 Second Assignment of Error
 The trial court erred in overruling Appellant's motion to suppress when the arresting deputy lacked reasonable suspicion to stop Appellant's vehicle.
 Third Assignment of Error
 The trial court erred in prohibiting Appellant from introducing evidence of his satisfactory performance on field sobriety tests. *Page 3 
 Fourth Assignment of Error
 The record is inadequate to establish that Appellant had a blood alcohol content in excess of the legal limit at the time he operated his vehicle.
 {¶ 5} Because the first two assignments of error involve common issues of the fact surrounding the stop and arrest of Mr. Obhof, the assignments of error will be addressed jointly.
 {¶ 6} Thad Lookabaugh, a deputy with the Franklin County Sheriff's Office, was on routine patrol in the early morning hours of February 6, 2006, when he observed Robert Obhof operating a motor vehicle on North High Street in Columbus, Ohio. Mr. Obhof drove his 1998 Jeep into the left turn lane, then back into the regular lane of travel and then back into the left turn lane again. The second time Mr. Obhof entered into the left turn lane, he proceeded to make a turn onto Maynard Avenue.
 {¶ 7} Deputy Lookabaugh felt that Mr. Obhof had violated the statute requiring an operator of a motor vehicle to operate the vehicle within the marked lanes, so the deputy stopped Mr. Obhof's vehicle. Upon approaching the Jeep, Deputy Lookabaugh noticed a strong odor of an alcoholic beverage on Mr. Obhof's breath. The deputy asked Mr. Obhof if he had been drinking and was informed that Mr. Obhof had at least one beer an hour for the last nine hours. Mr. Obhof's speech was slow and slurred.
 {¶ 8} After that conversation, Deputy Lookabaugh asked Mr. Obhof to get out of his Jeep and submit to field sobriety tests. The deputy first administered a horizontal gaze nystagmus test, followed by a one legged stand test, and next followed by a walk-and-turn test. Deputy Lookabaugh then placed Mr. Obhof under arrest on a charge of OVI. *Page 4 
 {¶ 9} Irrespective of the results of the field sobriety tests, Deputy Lookabaugh had probable cause to arrest Mr. Obhof when the actual arrest took place. Mr. Obhof's admission that he had drunk at least nine beers in the preceding nine hours, coupled with his slow, slurred speech and strong odor of an alcoholic beverage constituted probable cause to arrest Mr. Obhof.
 {¶ 10} The field sobriety tests were not administered in substantial accord with the National Highway Transportation Safety Administration guideline for administering such tests, so the deputy's conclusion that Mr. Obhof failed the field sobriety tests did not strengthen the basis for probable cause to arrest. However, the results of the field sobriety tests were not necessary to establish probable cause to arrest.
 {¶ 11} The first assignment of error is overruled.
 {¶ 12} The second assignment of error alleges that Deputy Lookabaugh did not have a reasonable, articulable suspicion of a traffic violation such that the deputy could initiate a traffic stop. For constitutional purposes, the standard for police initiating a traffic stop are grounded in Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868. For a so-called Terry stop, police must have a reasonable articulable suspicion of illegal conduct.
 {¶ 13} Deputy Lookabaugh saw Mr. Obhof drive his vehicle into the passing lane, out of the passing lane and then back into the passing lane before a turn was executed. The deputy felt this was a violation of R.C. 4511.33, which reads:
 (A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply: *Page 5 
 (1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.
 (2) Upon a roadway which is divided into three lanes and provides for two-way movement of traffic, a vehicle or trackless trolley shall not be driven in the center lane except when overtaking and passing another vehicle or trackless trolley where the roadway is clearly visible and such center lane is clear of traffic within a safe distance, or when preparing for a left turn, or where such center lane is at the time allocated exclusively to traffic moving in the direction the vehicle or trackless trolley is proceeding and is posted with signs to give notice of such allocation.
 (3) Official signs may be erected directing specified traffic to use a designated lane or designating those lanes to be used by traffic moving in a particular direction regardless of the center of the roadway, or restricting the use of a particular lane to only buses during certain hours or during all hours, and drivers of vehicles and trackless trolleys shall obey the directions of such signs.
 (4) Official traffic control devices may be installed prohibiting the changing of lanes on sections of roadway and drivers of vehicles shall obey the directions of every such device.
 (B) Except as otherwise provided in this division, whoever violates this section is guilty of a minor misdemeanor. If, within one year of the offense, the offender previously has been convicted of or pleaded guilty to one predicate motor vehicle or traffic offense, whoever violates this section is guilty of a misdemeanor of the fourth degree. If, within one year of the offense, the offender previously has been convicted of two or more predicate motor vehicle or traffic offenses, whoever violates this section is guilty of a misdemeanor of the third degree.
 {¶ 14} Although innocent explanations can be theorized for Mr. Obhof's erratic driving in the early morning hours of February 6, 2006, the driving observed by Deputy *Page 6 
Lookabaugh was sufficiently suspicious as to constitute a reasonable articulable suspicion that a traffic law had been violated for purposes of a traffic stop.
 {¶ 15} The second assignment of error is overruled.
 {¶ 16} In the third assignment of error, counsel for Mr. Obhof alleges that the trial court erred in refusing to admit evidence of Mr. Obhof's performance on the improperly administered field sobriety tests as evidence that Mr. Obhof's blood alcohol did not exceed the lawful limit. The trial court followed the mandate of the Supreme Court of Ohio inState v. Boyd (1985), 18 Ohio St.3d 30, 479 N.E.2d 850, in finding the test results of even a properly administered field sobriety test are not relevant in contesting a per se charge based upon the results of a breath test. The syllabus for the Boyd case reads:
 In order to sustain a conviction under R.C. 4511.19(A)(3), there must be proof beyond a reasonable doubt that the defendant was operating a vehicle within this state and that at the time he had a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath. The relevant evidence is limited to that evidence having any tendency to make the existence of either or both of these facts more probable or less probable.
 {¶ 17} The third assignment of error is overruled.
 {¶ 18} The fourth assignment of error alleges that the state did not present evidence which adequately proved that Mr. Obhof had a blood alcohol content in excess of the legal limit at the time he operated a vehicle. Counsel for Mr. Obhof does not contend that a defect existed in the testing procedure but, that, the breath test did not establish that Mr. Obhof had the impermissible level of alcohol in his system when he was operating a motor vehicle, as opposed to when he submitted to the breath test. *Page 7 
 {¶ 19} In the appropriate case, this argument might have some merit. In Mr. Obhof's case, it does not. Mr. Obhof admitted that he had consumed one or more beers per hour for over nine hours. He did not allege that he had put a large quantity of alcohol in his body shortly before he began driving so the alcohol had not made it into his blood and breath by the time his breath was tested. There is no evidence to support a theory that he consumed more alcohol between when he stopped driving and when the breath test was administered. If anything, the facts suggest that Mr. Obhofs body was burning off alcohol between the time when he was pulled over and the time he actually submitted to the test. Thus, his test results were in all likelihood lower than his blood alcohol content when he was pulled over.
 {¶ 20} The test results were 0.141 g/210 L — well above the state cut-off of .08 g/210 C per R.C. 4511.19. There is no basis in this case for asserting that Mr. Obhof was operating a vehicle with a blood alcohol content below the legal limit.
 {¶ 21} The fourth assignment of error is overruled.
 {¶ 22} All four of the assignments of error having been overruled, the judgment and sentence of the Franklin County Municipal Court is affirmed.
Judgment affirmed.
 SADLER, P.J., and McGRATH, J., concur. *Page 1